In the Matter of the Estate of HOWARD ROBARD HUGHES, Jr., Deceased, MINORS and ABSENT HEIRS, Appellants, v. FIRST NATIONAL BANK OF NEVADA and WILLIAM R. LUMMIS, Co-Special Administrators, Respondents.

No. 9463

February 28, 1979 590 P.2d 1164

*George Dickerson; Charles William Johnson,* Las Vegas, for Appellants.

*Morse, Foley & Wadsworth,* Las Vegas; *Andrews, Kurth, Campbell & Jones,* Houston, Texas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court approving the first accounting of First National Bank of Nevada and William R. Lummis, who are the respondents and co-special administrators of the estate of Howard Robard Hughes, Jr., and granting an interim allowance of fees and costs to Bank and their counsel.

Attorneys appointed to represent the absent heirs and minors, who are the appellants herein, objected to the accounting and the granting of the allowance. They claim there is no authority under Nevada law for the allowances of interim fees to special administrators or their counsel. They also challenge that part of the accounting, approved by the court, which reimbursed Summa Corporation, of which Hughes was the sole stockholder, for certain sums advanced on behalf of the estate.

## THE FACTS

Howard Robard Hughes, Jr. died on April 5, 1976, while enroute from Acapulco, Mexico to Houston, Texas. On April 14, 1976, Bank was appointed special administrator of decedent's estate in the State of Nevada. Its duties and responsibilities were enlarged in June, 1976, to those of a general administrator. NRS 140.060(2). William R. Lummis was appointed co-special administrator on October 7, 1976.

The co-special administrators filed their instant accounting and petition on December 3, 1976. The court below, after a hearing at which the objections of the appellants were heard and considered, approved the first accounting, ordering reimbursement to Summa in the sum of $292,322.16 for expenditures advanced on behalf of the estate, and granting interim allowances of $50,000 to Bank, and $190,000 to their attorneys.

## THE REIMBURSEMENT OF SUMMA CORPORATION

Appellants suggest that the reimbursement of Summa was improper because Summa had not filed a creditor's claim within the period specified by NRS 147.040, and that its claim, therefore, is barred under the terms of the statute.[1]

---

[1] NRS 147.040

1. All persons having claims against the deceased must, within 90 days

We have consistently held that a claim which will not diminish the estate does not fall within the bar of the nonclaim statute under the provisions of NRS 147.040. *E.g.,* Bell Brand Ranches v. First Nat'l Bank, 91 Nev. 88, 531 P.2d 471 (1975); Reed v. Dist. Court, 75 Nev. 338, 341 P.2d 100 (1959). Indeed, counsel for appellants suggested at the hearing below, "whether the estate pays [these expenses] in the form of a claim payment to Summa or whether the profits flowing to the estate [now sole owner of Summa] are reduced, it seems to me it has the same result." We agree.

The Supreme Court of Montana, In re Russell's Estate, 59 P.2d 777 (Mont. 1936), considered a similar situation, where an executrix had paid sums to satisfy certain debts and obligations of an oil company owned almost entirely by the decedent through a holding company, although no statutory creditor's claim against the estate had been filed. The court ruled that it was error to refuse to credit the executrix with the sums paid, and said, 59 P.2d at 780,

> This court has not hesitated to ignore and disregard corporate entities where the ends of justice require it. [Citations omitted.] Here we think that the ends of justice require that the corporate entities of these two corporations should be disregarded to the extent that the action of the executrix in discharging the corporate debts as she did should be approved and that she should be credited for the same as requested in her account. This view is particularly emphasized by the fact that the stock in the two corporations really constituted the estate, and, of course, the stock really represented the property held in the names of the corporations. . . .

Under the circumstances here presented, we find that the court below was not precluded by the provisions of NRS 147.040 from ordering reimbursement to the wholly-owned corporation of decedent for expenditures paid on behalf of the decedent. As to appellant's remaining objections, they are not

---

after the first publication of the notice specified in NRS 147.010, file the same, with the necessary vouchers, with the clerk of the court, who shall file and register each claim.

2. If a claim is not filed with the clerk within 90 days after the first publication of the notice, the claim shall be forever barred; but when it is made to appear, by the affidavit of the claimant or by other proof to the satisfaction of the court or judge, that the claimant had no notice as provided in this chapter, the claim may be filed at any time before the filing of the final account.

supported by relevant authority and, therefore, will not be considered. Holland Livestock v. B & C Enterprises, 92 Nev. 473, 553 P.2d 950 (1976).

## THE ALLOWANCE OF FEES TO SPECIAL ADMINSTRATOR AND ATTORNEYS

Appellants argue that the allowance of fees to the Bank, as special administrator, and to the attorneys for the special administrators, was "premature". They suggest that it was not within the discretionary power of the court to award such fees until the estate is closed, or at least until the completion of all pending litigation relating to any alleged wills. We do not agree.

Provision for allowance of fees to executors and adminstrators is set forth in NRS 150.050. At the time of the hearing on the petition, that statute provided that "[a]ny executor or administrator, at any time after the issuance of letters testamentary or of administration, and upon such notice to the persons interested in the estate as the court or a judge thereof shall require, may apply to the court for an allowance upon his commissions. . . ." 1941 Nev. Stats. ch. 107, § 210, p. 210. In 1977, however, the legislature amended this statute to expressly include special administrators. 1977 Nev. Stats. ch. 493, § 1, p. 1017.

Statutory authority also existed, at the time of the hearing on the petition, for allowance of fees to attorneys "for executors and administrators", "for services rendered up to a certain time during the proceedings." 1975 Nev. Stats. ch. 751, § 31, p. 1776 [NRS 150.060 (1) and (3)]. Later, and at the same time the Legislature amended the provision related to allowances for executors and administrators, this statute relating to attorneys fees was also amended to include "[a]ttorneys for executors, administrators, *and special administrators*". 1977 Nev. Stats. ch. 493, § 2, p. 1018.

While it is true that the former statutes did not expressly include special administrators or their attorneys at the time of the hearing for fees and allowances in the instant case, they were, nevertheless, not excluded by the general terms of the said statutes. If any such limitation did exist, the Legislature corrected it by the 1977 amendments. As this court said in Woofter v. O'Donnell, 91 Nev. 756, 762, 542 P.2d 1396 (1975), "[w]hen a former statute is amended, or a doubtful interpretation rendered certain by subsequent legislation, it has been held that such amendment is persuasive evidence of what

the Legislature intended by the first statute.'' We conclude, therefore, that the Legislature intended to authorize the probate court, acting within its discretion, to award interim fees, for services rendered, to special administrators and their attorneys.

Nor do we find an abuse of discretion by the court below in allowing the awards granted. The court had before it evidence of the time and effort devoted by the Bank and the attorneys to the complex affairs of the estate. Services rendered by the Bank included handling of some $1.5 million in cash, arrangement for the lease or sale of aircraft which had to be marshalled from points in this country and abroad, responsibility for overseeing the operation of decedent's business interests in Nevada, aid in the search for a valid will, review of creditors' claims, and preparation for participation in or review of approximately twenty law suits. The attorneys documented an equally impressive effort, including research, advice, and consultation with attorneys in other jurisdictions regarding the appointment and responsibilities of the special administrators, the search for a will, efforts to determine decedent's domicile and situs of decedent's properties, appraisal of the estate, and advice to the special administrators regarding litigation against the estate and federal estate tax matters. There was also the prospect of years of litigation before an executor or general administrator could be appointed, with additional years before the estate could finally be closed. It is clear that in allowing interim compensation, under these circumstances, the court was acting in the best interests of the estate, for ''to refuse to periodically compensate [the special administrator and the attorneys] would be tantamount to requiring their resignations.'' In re McDonald's Estate, 188 P. 523, 527 (Wash. 1920).

The order of the district court settling the first account of the special administrators and ordering allowance of fees for the co-special administrator Bank, and for the attorneys of the special administrators, is affirmed.